# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEARS ROEBUCK AND CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 05 C 2266 |
| NATIONAL LOGISTICS CORP., ) | |
| NATIONAL FREIGHT, INC., ) | Judge Ronald A. Guzmán |
| LANDSTAR INWAY, INC., ) | |
| LANDSTAR LOGISTICS, INC., ) | |
| JOHN D. STATON and DELTA ) | |
| SERVICES CORP., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Sears, Roebuck and Co. ("Sears") has sued National Logistics Corporation ("NLC") for, among other things, its alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL. COMP. STAT. 505/1 *et seq.* ("ICFA"). Before the Court is NLC's motion pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the ICFA claim from the Amended Complaint. For the reasons provided in this Memorandum Opinion and Order, the motion is denied.

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### Factual Background

NLC is a property broker that negotiates contracts with motor carriers to transport freight. (Am. Compl. ¶¶ 2, 14.) Sears Contract Sales ("SCS") is a business unit of Sears that sells household appliances to bulk purchasers. (*Id.* ¶ 13.) In 1989, SCS hired NLC to arrange for the transportation of the appliances it sells from the manufacturers to SCS' warehouse and from SCS' warehouse to the purchasers. (*Id.* ¶¶ 1, 13-14.) NLC did not actually transport any of the merchandise. (*Id.* ¶ 15.) Rather, NLC chose the motor carriers that would do so, negotiated rates with them, and entered into contracts with them in its own name. (*Id.*)

This arrangement required the motor carriers to submit their bills directly to NLC for payment. (*Id.* ¶ 16.) NLC paid the carriers, and then billed SCS for the carriers' charges plus a transaction cost and a monthly administrative charge to cover NLC's profit and overhead. (*Id.* ¶¶ 16-17.) Because the contracts were between NLC and the carriers, SCS neither received any bills directly from the carriers nor paid them for their services. (*Id.* ¶¶ 9, 24-25.)

NLC provided SCS with a weekly invoice that tracked, summarized and consolidated all freight bills for that week. (*Id.* ¶ 36.) Although the invoices listed each carrier's freight charge, NLC did not submit the actual freight bills to SCS. (*Id.*)

In 1999, NLC allegedly discovered a $4.7 million deficit in the account it used to pay the carriers. (*Id.* ¶ 37.) NLC addressed the problem by modifying its billing software so that an overcharge was automatically added to each freight charge on its invoices to SCS. (*Id.* ¶¶ 10,

2

37.) SCS neither knew about nor authorized the additional charges. (*Id.* ¶¶ 10, 38.) In this manner, NLC overcharged SCS as much as $3.6 million between 1999 and 2004. (*Id.* ¶ 39.)

## Discussion

In Count VI of its amended complaint, Sears alleges that NLC's practice of overcharging SCS violates the ICFA. That statute prohibits "the use or employment of any deception, fraud . . . or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce" and authorizes suits for actual damages against those who violate it. 815 ILL. COMP. STAT. 505/2, 10a. According to the Illinois courts, however, that cause of action is available only to: (1) consumers, either individual or corporate; and (2) non-consumer entities that are victimized by "trade practices addressed to the market generally or [that] otherwise implicate[] consumer protection concerns." *Downers Grove Volkswagen, Inc. v. Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 39-41 (Ill. App. Ct. 1989).

According to the statute, a "consumer" is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT. 505/1(e). Moreover, it says that a "person" includes "any . . . corporation . . . , company . . . [or] business entity" and that "merchandise" is "any objects, wares, goods, commodities, intangibles . . . , or services." 815 ILL. COMP. STAT. 505/1(b), (c). Thus, a business can be a consumer within the meaning of the Act, but only if it purchases goods or services for its own use. *See Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004) (stating that one who buys merchandise for resale or to incorporate it into a product that he sells is not an ICFA consumer).

3

NLC says that SCS cannot be a consumer because its business is resale. Whether SCS is a consumer within the meaning of the ICFA, however, is not dictated by the general nature of its business, but by its use of NLC's services. *See* 815 ILL. COMP. STAT. 505/1(e). If SCS resells NLC's services or the shipping services NLC arranges or incorporates those services into the appliances it sells, then SCS is not a consumer. *Id.*; *Williams Elec. Games*, 366 F.3d at 579. But Sears does not allege that SCS does any of those things. Rather, it says it uses NLC to arrange the shipment of the appliances from the manufacturers to SCS and from SCS to the ultimate purchasers. (Am. Compl. ¶¶ 13-15, 73.) Sears has, therefore, alleged that SCS is consumer within the meaning of the Act.

The situation in this case is analogous to that in *Chicago District Council of Carpenters Welfare Fund v. Caremark RX, Inc.*, No. 04 C 5868, 2005 WL 991897 (N.D. Ill. Apr. 14, 2005). The plaintiff in that case was the benefit provider for a labor union. *Id.* at *1. The defendants were the companies that plaintiff hired to manage its prescription-drug program. *Id.* Defendants purchased the drugs plaintiff needed from retail pharmacies and drug manufacturers and then charged plaintiff a set price for each drug. *Id.* In the end, because of rebates and other discounts extended to them by the suppliers, defendants paid less for the drugs than they charged plaintiff. *Id.* When plaintiff discovered that fact, it filed suit against defendants alleging that, among other things, they violated the ICFA. *Id.* at *6.

Defendants moved to dismiss, arguing that they were not consumers as defined by the Act. *Id.* The court disagreed:

> Defendants contend that Plaintiff is not a consumer because it is a sophisticated corporation purchasing administrative services in connection with certain health and welfare benefits. However, a consumer is "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815

4

> ILCS 505/1(e). Business entities, such as Plaintiff, are considered persons under the Consumer Fraud Act. 815 ILCS 505/1(c). "The term merchandise includes any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services . . . ." 815 ILCS 505/1(b) . . . . Plaintiff alleges that it purchased administrative services relating to pharmaceuticals from Defendants. Accordingly, Plaintiff has properly alleged it is a consumer under the Act.

*Id.*

Like the plaintiff in *Caremark*, SCS used NLC as a conduit for obtaining the products it sells, not as a supplier of the products. Because SCS alleges that it purchased NLC's services for its own use, not for resale, it is a consumer within the meaning of the Act. *See Duchossois Indus., Inc. v. Crawford & Co.*, No. 99 C 3766, 2001 WL 59031, at *4 (N.D. Ill. Jan. 19, 2001) (holding that plaintiff, which had hired defendant as a claims adjuster for worker compensation claims, was a consumer of defendant's services).

*Ivanhoe Financial, Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 2091997 (N.D. Ill. Sept. 15, 2004), does not dictate a different result. In that case, the plaintiff-lender contracted with the defendant-broker to package and submit residential mortgage applications for funding by plaintiff. *Id.* at *1. The parties' agreement made defendant responsible for the complete and accurate preparation of the loan applications. *Id.*; *see Ivanhoe Fin., Inc. v. Highland Banc Corp.*, No. 03 C 7336, 2004 WL 546934, at *1 (detailing the facts of the case). When plaintiff discovered that some of the loan packages defendant had submitted contained false information, it sued defendant for, among other things, violating the ICFA. *Ivanhoe Fin., Inc.*, No. 03 C 7336, 2004 WL 2091997, at *1.

Defendant argued that plaintiff had no standing to pursue an ICFA claim because it was not a consumer. *Id.* at *4. The court agreed:

5

> According to defendants' allegations, Ivanhoe was not acting as an ordinary consumer when it purchased their services. Rather, it contracted with defendants to get the grist for its mortgage banking mill. Because Ivanhoe's alleged relationship to defendants is more akin to that of a manufacturer to a supplier than an individual consumer to a business, Ivanhoe does not fall within the ICFA's definition of consumer.

*Id.* at *5.

The plaintiff in *Ivanhoe* was held not to be a consumer because it incorporated the merchandise that defendant supplied, *i.e*, the loan applications, into the products that it sold, *i.e*, the mortgage loans. Without the "raw materials" provided by the defendant, Ivanhoe's products would not exist. That is not true here. SCS does not incorporate the freight services supplied by NLC into the products it sells. Rather, SCS uses those services to transport its goods from place to place. Consequently, *Ivanhoe* has no application to this case.

Nor does *First Magnus Financial Corp. v. Dobrowski*, 387 F. Supp. 2d 786 (N. D. Ill. 2005), the other case on which NLC relies. In that case, a lender brought an ICFA claim against a title company that had issued a false title commitment on property that secured one of the lender's loans. *Id.* at 788-89. Because the lender sold the loan, and the title commitment that went with it, immediately after the transaction closed, the court held that the lender was not a consumer under the Act. *Id.* at 794 ("Plaintiff's allegations reveal that it resold Alliance Trust's service in the ordinary course of its business, and thus it was not a consumer under the ICFA definition.")

Unlike the lender in *First Magnus*, SCS did not resell NLC's services. Rather, SCS sold the appliances that were delivered to it via the motor carriers that NLC hired. In light of that distinction, the reasoning of *First Magnus* does not apply.[1]

### Conclusion

For the reasons set forth above, NLC's motion to strike and dismiss Count VI of Sears' Amended Complaint [doc. no. 68] is denied. Defendant Staton's motion to join in NLC's motion to dismiss [doc. no. 81] is granted.

**SO ORDERED.**            ENTERED: 6/27/06

HON. RONALD A. GUZMAN
**United States District Judge**

---

[1] Because SCS has alleged that it is a consumer, we need not decide whether there is a nexus between NLC's alleged actions and consumer protection concerns. *See Downers Grove Volkswagen*, 546 N.E.2d at 40-41 (stating that the ICFA gives standing to consumers, and to non-consumer businesses that allege "conduct involv[ing] trade practices addressed to the market generally or [that] otherwise implicates consumer protection concerns").

7